[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR PAYMENT OF POST-JUDGMENT INTEREST
The plaintiff, Lillian Mack, was awarded judgment by jury trial in the amount of $78,400 on March 2, 1998, from which the defendant appealed. The defendant appealed the judgment. The Appellate Court denied the defendant's appeal by its decision of October 5, 1999, thereby affirming the judgment. Mack v. Lavalley, 55 Conn. App. 150, 165 (1999). The defendant's petition for certification to the Supreme Court was denied on December 1, 1999. The face value of the judgment was paid on February 4, 2000, without prejudice of course to the plaintiffs right to seek post-judgment interest from date of judgment to date of payment.
 I
The statute upon which the plaintiff relies to establish her claim for post-judgment interest is General Statutes § 37-3b, first enacted in 1981 as part of Public Act 81-315. Section 2 thereof provided as follows:
 Sec. 2. For a cause of action arising on or after the CT Page 7804 effective date of this act, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date of judgment.
This statute remained in effect until Public Act 97-58, Section 2, which, for the purposes of this motion, changed the wording "may be recovered" to the words "shall be recovered". The statute was effective May 27, 1998 and provided that it affected "a cause of action arising on or after May 27, 1997."
The cause of action in the instant case arose on May 29, 1992, as articulated by the complaint of June 2, 1994. Hence the applicable statute is that of 1981, providing for "may" rather than the later statute which provided for "shall".
A review of the history of the statute is appropriate, although not necessarily enlighting. This statute, § 31-3b did not come into existence until 1981, by enactment of Public Act 81-315, Section 2. The proposition of recovering interest in negligence actions was part of the general subject of recovery of interest "in civil actions" which historically was the only statute which dealt with the recovery of interest in civil actions "for the detention of money after it becomes payable."
Section 37-3a has preserved the discretionary language "may be recovered", pertaining to other civil actions, despite the fact that the legislature in 1997 changed § 37-3b to read in mandatory fashion "shall be recovered" for negligence actions.
The root of these two statutes, goes back to at least 1902, first appearing as Section 4600 of the Revision of 1902. There is some indication that the statute may be of more ancient origin, dating back to the early 1700 era.
As indicated the statute § 37-3a and its predecessors remained constant through today's date. It was determined early on that interest was not to be awarded on unliquidated demands, such as assault, battery, slander. Regan v. New York New England R.R. Co., 60 Conn. 142, 143
(1891). This proposition is re-affirmed by the case of New York N.H. HR. Co. v. Ansonia L W. P. Co., 72 Conn. 703, 750 (1900), which states "There is no right to interest on a disputed demand . . . Although the case does state that where it is clear that the obligation and the amount is clearly discernable from the start, (probably applicable only to property damage) there might be a valid claim for interest. CT Page 7805
In 1981, by P.A. 81-315 the legislature divided the statute into §37-3a, previously providing for interest in civil actions, and §37-3b, allowing interest in negligence actions from the date of judgment, both statutes provided for a discretionary "may" basis.
A review of the legislative history of the splitting of Section 37-3
into Section 37-3a and Section 37-3b is of no significant assistance. No reason is given for doing this, either on the floor of the respective houses or in the judiciary committee. It appears, from the comments of Mr. Biedier in the committee, that it was part of an initial bill to assess interest from the day of injury, to compel settlements during an era of high interest. As enacted § 37-3b allowed interest, discretionary, from the date of judgment. Noteworthy, the legislative history of the 1981 Act does not deal with the prospect of delays caused by appeals.
In 1997, by Public Act 97-58, Section 2 the legislature changed the wording of § 37-3b from the discretionary "may" to the mandatory "shall". Nothing in the legislative history indicates that the legislature was attempting to clarify what the legislature perceived to be an improper interpretation by the judiciary of the word "may" in the 1981 legislation. In testimony before the house committee the Chamber of Commerce stated: "The Chamber is opposed to Raised House Bill No. 6597 because mandating rather then allowing courts to post judgment interest from the date of verdict or judgment, whichever is sooner, penalizes employers that are exercising their right to ask the court to consider certain motions. Raised House Bill No. 6597 would have a chilling effect on employers who lose in court but who still wish to pursue legal avenues statutorily open to them."
Nowhere in the legislative history is it suggested that Public Act 97-58, changing "may" to "shall" was intended to clarify existing law. It is clear that the legislature intended to change from discretionary to mandatory, despite the protest of the chamber that the change would thereafter, have a chilling effect on post judgment remedies.
 II
The criteria for determination of post judgment interest is quite clear. "A decision to deny or grant post judgment interest is a matter lying within the discretion of the trial court." Brewer v. D'Onfro,45 Conn. App. 543, 550 (1997). "The court's determination of regarding the award of interest should be made in view of the demands of justice rather than through an application of any arbitrary role . . . Whether interest may be awarded depends on whether the money involved is payable . . . and CT Page 7806 whether the detention of the money is or is not wrongful under the circumstances . . ." Bower v. D'Onfro, supra, p. 551.
The Bower court cites, with approval, the case of Maluszewski v.Allstate ins. Co., 34 Conn. App. 27, 38 (cert. denied) 1997. In that case the money was awarded by arbitrators, but was delayed by the fact of the defendant's appeal to the Supreme Court. Judge Jackaway denied the appeal but further concluded that the defendant "had make its arguments in good faith," and hence he denied interest on the appeal of final judgment, as provided by statute as a matter of right. See General Statutes §52-263. It is without doubt that the appeals process is time consuming and involves substantial expense to both the appellant and the appellee. However, bearing in mind the discretionary nature of the pre-1997 Section37-3b under which this motion is made, the court cannot conclude that the mere taking of an appeal by a defendant is such conduct as to automatically call for the payment of interest. The court further takes into consideration that the filing and prosecution of an appeal frequently results in the reversal of a plaintiffs judgment and the extinguishing of the judgment. Any statute or rule which has the prospect of a chilling effect upon a party's right to appeal must be viewed with extreme caution.
This court determines that the mere taking and prosecuting of the appeal in this case is not in itself sufficient to cause the interest of justice to call for post judgment interest.
The question before the court is whether the taking and prosecution of the appeal was bona fide and in good faith, or conversely was in bad faith, frivolous and/or for the mere purpose of delay.
The Appellate Court decision is reported as Mack v. Lavalley,55 Conn. App. 150, October 1999. Thereafter petition for certification was denied. The judgment was paid promptly thereafter on February 4, 2000. The appeal involved a series of issues each of which posed significant questions which had not previously been specifically decided by our appeals courts. First, what is the degree of evidence sufficient to show that a deposed witness is unavailable (Practice Book Section 13-31). Second, where the absent witness was noticed as an expert, but his qualifications do not appear in the deposition, are his non-expert physical observations that the threshold was "slippery" and "sloped toward the street" admissible, bearing in mind that any deposition testimony stating an expert opinion that the condition was not reasonably safe would be prohibited by the court. Third, was the defendant prejudiced because this deposition witness had been described to the jury panel as a professional engineer. CT Page 7807
As to the premises, factual and legal questions of possession and control and proximate cause were issues which clearly lent themselves to appellate review.
Finally, there being a deduction for comparative negligence, the issue before the court on the collateral source hearing was how to apply the collateral source payment to the reduced economic damages. Differences of opinion existed between various superior court decisions, applying different formulas to deal with collateral source reduction. Without doubt this was an issue which specifically lent itself to appeals court review, resulting in a specific formula for the guidance of all litigants and the trial courts.
 Conclusion
This court concludes that the taking and prosecution of the appeal was unquestionably bona fide and in good faith. The defendant diligently prosecuted the appeal. The court determines that it is not in the interest of justice that postjudgment interest be awarded, concluding that the detention of the money was not wrongful. The mere fact that the taking of an appeal causes a stay of the judgment to be effectuated under Practice Book Section 61-11(a) of course does not lead to a conclusion that the taking of an appeal is for the sole purpose of causing unwarranted delay.
For the reasons set forth herein the plaintiffs motion for post judgment interest under this controlling statute, § 31-3b, Public Act 81-315, is denied.
L. Paul Sullivan